**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**BESSIE J. KIRKWOOD,**                                                                 **PLAINTIFF**

**v.**                                                               **Civil Action No.: 1:08CV162-SAA**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**                                            **DEFENDANT**

**MEMORANDUM OPINION**

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Bessie J. Kirkwood for a period of disability and disability insurance benefits (DIB) under Section 216(I) and 223 of the Social Security Act and for supplemental security income payments under Section 1614(a)(3) of the Act. Plaintiff applied for benefits on November 16, 2001, alleging that she became disabled on May 20, 1999, due to thyroid disorders and borderline intellectual functioning.[1] The plaintiff's claim was denied initially and on reconsideration. Plaintiff requested an administrative hearing which was held on February 6, 2003.[2] The ALJ issued an unfavorable decision on April 17, 2003, and plaintiff properly filed a request for review with the

---

[1] Plaintiff filed a previous application for disability benefits in May 1999. This application was ultimately denied by an ALJ in June 2001. Thereafter, the Appeals Council denied further review on November 7, 2001. The plaintiff did not further pursue this application, and it was administratively final for that period.

[2] The hearing was held before Administrative Law Judge Patti L. Hunter in San Bernardino, CA. The plaintiff was not represented by counsel at that hearing and there is no transcript from that hearing contained in the record.

1

Appeals Council on June 6, 2003. On June 10, 2004, the Appeals Council denied plaintiff's request for review. However, by letter dated August 18, 2004, the Appeals Council vacated its June 10, 2004 denial of review and remanded plaintiff's claim to the ALJ, directing him to consider new evidence submitted after the date of the hearing decision; give further consideration to the examining source opinions of Dr. Whelan and explain the weight given to that evidence; further evaluate the plaintiff's ability to read and write and, as appropriate, request that examining sources provide additional evidence or clarification about what the claimant can still do despite her impairments. (Tr.228-229). In light of plaintiff 's subsequent applications for benefits on July 1, 2003, the Appeals Council directed that the ALJ consolidate those claims and issue a new decision on the associated claims. *Id.*

The ALJ conducted a hearing on August 19, 2005, after which he issued an unfavorable decision. Plaintiff again filed a request for review with the Appeals Council. By letter dated November 14, 2006, the Appeals Council denied plaintiff's request for review. The plaintiff timely filed the instant appeal which is now ripe for review.

## FACTS

The plaintiff was born in 1950, completed only about the third grade in school (Tr. 394, 423) and was fifty-one years old at the time she protectively filed her applications for benefits on November 16, 2001. (Tr. 97). Her past relevant work was as a bus driver. (Tr. 103). In a consultative psychological evaluation in June 2003 plaintiff revealed that she had been a farm laborer for much of her life and then a bus driver from 1981 to 1999. (Tr. 423). She contends that she became disabled in May 1999 due to back problems, high blood pressure, nervousness, arthritis, anxiety, tinnitus, vertigo, muscle spasms in her hip and back, headaches and impaired

2

vision. (Tr. 103).

The ALJ determined that the plaintiff suffered from "severe" impairments including diminished intellectual functioning and a dysthymic disorder (Tr. 53), but that these impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2003). (Tr. 53). The ALJ determined that the plaintiff retains the Residual Functional Capacity (RFC) to perform the exertional demands of "medium" level work, but that she is "seriously limited but not precluded" in her ability to understand, remember and carry out detailed instructions, she retains a "limited but satisfactory" ability to maintain attention and concentration, to sustain an ordinary routine, to complete a normal workday and work week without psychologically-based interruptions, and to interact appropriately with the general public and supervisors. (Tr. 57-58). Finally, the ALJ found that the plaintiff had "no impairment related physical limitations." (Tr. 57). Consequently, the ALJ held that the plaintiff retained the ability to perform her past relevant work as a bus driver and was not disabled under the Social Security Act. (Tr. 58).

On appeal to this court raises the following issues:

1. Whether substantial evidence supports the Commissioner's finding that the plaintiff has a "marginal" education and therefore erred in failing to find her disabled at step three of the sequential evaluation process under Listing 12.05C;

2. Whether the Commissioner erred by failing to find that the plaintiff was disabled, at step five of the sequential evaluation process under Medical-Vocational Rule 202.09; and

3. Whether the ALJ erred in assessing the plaintiff's RFC by relying on the opinion of a non-examining DDS physician instead of three examining psychologists.

Docket 8, p. 1.

STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[3] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining her burden at each of the first four levels then the burden shifts to the Commissioner at step five.[4] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[5] Second, the plaintiff must prove her impairment is "severe" in that it "significantly limits her physical or mental ability to do basic work activities . . . ."[6] At step three the ALJ must conclude the plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2003).[7] If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[8] At step five the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[9] If the Commissioner proves

---

[3]*See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

[4]*Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991).

[5]20 C.F.R. §§ 404.1520(b), 416.920(b) (2003).

[6]20 C.F.R. §§ 404.1520, 416.920 (2003).

[7]20 C.F.R. § 404.1520(d), 416.920 (2003). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. §§ 404.1525, 416.925 (2003).

[8]20 C.F.R. §§ 404.1520(e), 416.920(e) (2003).

[9]20 C.F.R §§ 404.1520(f)(1), 416.920(f)(1) (2003).

other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that she cannot, in fact, perform that work.[10]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence, and whether the Commissioner used the correct legal standard. *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance . . . ." *Anderson v. Sullivan,* 887 F.2d 630, 633 (5th Cir. 1989) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971)).

The ALJ concluded plaintiff's has diminished intellectual functioning and dysthymia, a severe combination of impairments. (Tr. 58). Nevertheless, at step three the ALJ found that the plaintiff's limitations did not meet or equal any impairment listed at 20 CFR pt. 404, subpt. P, app. 1 (2008). (Tr. 58). The ALJ reviewed the medical records as a whole, considered the credibility of the plaintiff's subjective complaints, engaged in a detailed discussion of the plaintiff's symptoms and factors considered in determining credibility, and appropriately reviewed the plaintiff's mental abilities. He determined that the plaintiff retains the RFC to perform the exertional demands of medium exertional level work, has "seriously limited but not precluded" ability to understand, remember and carry out detailed instructions, retains a "limited but satisfactory" ability to maintain attention and concentration, to sustain an ordinary routine, to

---

[10]*Muse*, 925 F.2d at 789.

5

complete a normal workday and work week without psychologically-based interruptions, and to interact appropriately with the general public and supervisors. (Tr. 57-58). By utilizing the testimony of a vocational expert, the ALJ determined at step four of the sequential evaluation process that the plaintiff was capable of returning to her past relevant work as a bus driver, and thus was not disabled under the Act. (Tr. 57)

## DISCUSSION

<u>Are the ALJ's Conclusions that Plaintiff has a "Marginal" Education and Did Not Meet the Requirements of Listing 12.05C Supported by Substantial Evidence?</u>

Substantial evidence, has been defined by the Fifth Circuit as "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

The plaintiff quit school in the third or fourth grade. (Tr. 109, 394, 423). Test results from the Wechsler Adult Intelligence Scale-Third Edition (WAIS-III) as administered by Dr. Fleming in June 2003 revealed an estimated verbal IQ score of 56. (Tr. 425). Based on this score and additional evaluation, Dr. Fleming determined that the plaintiff was functioning at the kindergarten level of mental development. (Tr. 426). In April 2005, Dr. Whelan also

administered the WAIS-III test which revealed a Verbal IQ score of 53, a Performance IQ score of 51, and a full scale IQ of 48. (Tr. 535). Dr. Whelan stated, however, that he believed plaintiff "capable of scoring 15 to 20 points higher on both verbal and performance testing" and that "she probably had an IQ near 70" and could follow simple tasks, but offered malingering behavior. *Id.* On September 28, 2006, Dr. Whelan again administered the WAIS-III test, noting that plaintiff's "attorney had told her to do her best," and he believed she had "probably [done] her best today." (Tr. 26). Upon his retest, both plaintiff's verbal IQ and full scale IQ scores were 65. *Id.*

Plaintiff argues that the ALJ should have found her disabled at step three of the sequential evaluation under Listing 12.05C for mental retardation. 20 C.F.R. Part 404, Subpart P, Appendix 1, §12.05C. The Listing states:

> Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22). . . .The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less; OR
>
> C. A valid verbal, performance, or full scale IQ of 60 to 69 inclusive and a physical or other mental impairment imposing additional and significant work-related limitation of function; OR
>
> D. A valid verbal, performance, or full scale IQ of 60 to 69 inclusive or in the case of autism gross deficits of social and communicative skills with two of the following;
>
>> 1. Marked restriction of activities of daily living; or

> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
>
> 4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

The plaintiff asserts that the ALJ erred as a matter of law by not specifically finding that the plaintiff met the requirements of the listing thus mandating a finding that she was disabled under the Act. According to the plaintiff, because she has IQ scores as low as 48, two psychologist have found her IQ scores in the mild mental retardation range and that her abilities put her at or around the kindergarten level of functioning, the ALJ must make such a specific finding of disability, and a failure to do so mandates remand. Further, she claims that because her educational history shows that she met the requirements of the Listing before she was 22 years old, and she suffers from dysthymia and high blood pressure, she meets the non-IQ requirements of the Listing.

"The criteria in the medical listings are 'demanding and stringent.'" *Falco v. Shalala,* 27 F.3d 160, 162 (5th Cir. 1994). The plaintiff in a social security case bears the burden of proving that her condition satisfies the listing. In this case the plaintiff's full scale IQ score is at best 65. (Tr. 26). The record further reflects that she had an 17-year-long career as a bus driver. (Tr. 634). Consistent with Dr. Whelan's opinion that the plaintiff is of borderline intellectual functioning, the ALJ found that plaintiff's abilities and RFC, in conjunction with her long work history and lack of any impairment-related physical limitations, would allow her to return to her past relevant work as a bus driver. The ALJ referred specifically to the plaintiff's various IQ

8

scores, noting they were consistent with diminished intellectual functioning, but found that her complaints of mild to moderate mental retardation were not substantiated by the medical evidence. (Tr. 57). After examining the medical evidence as a whole, her lack of impairment related physical limitations, and the opinions of the Vocational Expert, Dr. Whelan and the non-examining DDS physician, the ALJ found that plaintiff was capable of returning to her past relevant work. Finally, the ALJ looked to the plaintiff's work history and found her past relevant work belied any argument that her IQ scores showed her incapable of employment. .

Because the ALJ provided explicit reasons for his decision, this court is persuaded that the ALJ's decision that the IQ tests were not entirely indicative of the plaintiff's abilities is supported by substantial evidence in the record. *See Chapman v. Astrue*, Civil Action No. 4:07cv80-P-S (N.D. Miss. Sept. 18, 2008). It is well established that an ALJ may make this type of factual determination on the validity of IQ tests. *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1983). The ALJ specifically considered the plaintiff's IQ scores in conjunction with her work history and the additional factors discussed above and determined her intellectual functioning was in line with the highest scores, keeping in mind the plaintiff's clear propensity to malinger or fail to do her best in testing situations. *See Johnson v. Bowen*, 864 F.2d 340, 347-48 (5th Cir. 1988). Therefore, the court concludes that the ALJ's decision that the plaintiff did not meet the requirement s under Listing 12.05C was proper and supported by substantial evidence.

<u>Was the ALJ required to use the Medical Vocational Guidelines?</u>

Alternatively, plaintiff argues that she should have been found disabled at step five of the sequential evaluation process under the medical-vocational guidelines rule found at 20 C.F.R. pt. 404, subpt. P, app. 1, Rule 202.09. She contends that because her previous two hearings in 2001

and 2003 resulted in findings that she was limited to "essentially a full range of light work" then the ALJ in the current case is now bound by the previous ALJs' assessments under 42 U.S.C. § 405(h).[11] Further, she contends that because she was found to be illiterate, she would have been found to be disabled under the medical-vocational guidelines.

In acquiescence Ruling 98-4(6), the Commissioner has stated that *res judicata* does not apply to unadjudicated subsequent periods:

> [I]f the subsequent claim involves deciding whether the claimant is disabled during a period that was not adjudicated in the final determination or decision on the prior claim, SSA considers the issue of disability with respect to the unadjudicated period to be a new issue that prevents the application of administrative *res judicata*. Thus, when adjudicating a subsequent disability claim involving an unadjudicated period, SSA considers the facts and issues *de novo* in determining disability with respect to the unadjudicated period.

*See* AR 98-4(6). Although the Fifth Circuit has not directly addressed this issue, there is clear case law that follows the dictates of the Commissioner's policy ruling. *See Ply v. Massanari*, 251 F.3d 777, 778 (8th Cir. 2001) (rejecting the claimant's argument that the ALJ should have applied earlier applications findings to later case). It is simply incorrect to assume that because a plaintiff was previously found to be limited to a specific RFC at one point, those findings would not change at another. Based on the ALJ's specific references to the medical evidence in the record and the discussion between the ALJ and plaintiff's attorney contained within the transcript

---

[11] 42 U.S.C. §405(h) states:
> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28, United States Code, to recover on any claim arising under this title.

of the hearing in this case, the court cannot conclude that the ALJ was incorrect in his determination that, for the specific time periods involved in the instant application for benefits, the plaintiff was capable of performing a range of medium work with only the limitations as found by the ALJ.

Was the ALJ's Assessment of Plaintiff's RFC in Error?

In this case, the ALJ based his RFC determination on the assessment of state agency physician Laura Whitworth. (Tr. 456 - 476). The plaintiff contends that it was not proper for the ALJ to assess plaintiff's RFC on the opinion of this non-examining physician instead of on the opinions of the three examining providers, Drs. Fleming, Whelan, and Hardy. Nevertheless, an ALJ is free to reject the opinion of any physician, examining or non-examining, when the evidence supports a contrary conclusion. *Martinez v. Chater* 64 F.3d 172, 176 (5th Cir. 1995); *Spellman v. Shalala*, 1 F.3d 357, 364 (5th Cir. 1993). Dr. Hardy examined the plaintiff in September 2005 and did not find her to be a malingerer. (Tr. 570). Yet Dr. Whelan, examining the plaintiff in March or April 2005 found plaintiff to be a malingerer to such a degree that he estimated her IQ score to be 15 to 20 points higher than her score of 48, noting that she did not recall the colors of the American flag, did not know what month Christmas comes in or why we wash clothes. (Tr. 535). There are many other instances in the medical records of plaintiff's inconsistencies or invalid test results, medical histories, claims of pain or other symptoms and abilities. (*See, e.g.* Tr. 497: Dr. Jim Adams notes that "testing range of motion on the left [shoulder] was invalid" stating, " I had just witnessed almost complete abduction of the left shoulder, but on testing, she said she could not abduct the shoulder more than 90°."; Tr. 533: In April 2005 plaintiff presented to examination by Dr. Whelan using a walker. She told him that

11

she had such pain and arthritis that she used a walker for balance. Yet there is no evidence that she was prescribed a walker by any physician or that she used one in other instances. She denied ever being diagnosed with rheumatoid arthritis when examined by Dr. Adams in 2003. Tr. 495). In fact, plaintiff's inconsistencies and her subjective complaints of pain are the single most consistent factor in the record. Although an examining physician determined plaintiff's abilities and IQ scores were "at the kindergarten or first grade level," the court cannot agree that the ALJ's decision to afford limited weight to the opinions of Drs. Hardy, Fleming and Whelan was without merit. There is more than ample evidence in the record to contradict these opinions, and the ALJ was free to afford more weight to the non-examining physician. *Oldham v. Schweiker* 660 F.2d 1054, 1057 (5th Cir. 1987). A review of the other medical evidence of record indicates that the ALJ's determination is fully supported by the evidence.

In all social security cases, the plaintiff bears the ultimate burden of proof on the issue of disability. *Kraemer v. Sullivan*, 885 F.2d 206, 204 (5th Cir. 1989). Under the Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). After properly making a determination of the plaintiff's RFC, the ALJ found at step four that the plaintiff was capable of returning to her past relevant work as bus driver. (Tr. 57). According to 20 C.F.R. §404.1520 and §416.920, "[i]f an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of 'not disabled' will be made." Further, Social Security Ruling 82-61 provides that an individual is to be found "not disabled" when it is determined that she retains the residual functional

capacity to perform the actual functional demands and job duties of her past relevant work. In this case, the ALJ, relying on voluminous medical and psychological evidence, the testimony of the plaintiff, and the testimony of a VE, found that the plaintiff was able to return to her past relevant work. After review of the evidence, the court cannot say that his determination was in error. While there may exist evidence to the contrary, such as the various IQ scores and a wide range of functioning, the evidence was properly discounted based on contradictory objective medical evidence in the record.

"Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Selders,* 914 F.2d at 617. Courts should strive for "judicial review [that is] deferential without being so obsequious as to be meaningless." *Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir.1986). In this case, the requisite "substantial evidence" is clearly contained in the record to support the Commissioner's decision. The court holds that the ALJ's decision should be affirmed.

## CONCLUSION

In accordance with this memorandum opinion, the decision of the ALJ is affirmed. A final judgment will issue this day.

THIS, the 16th day of March, 2009.

/s/ S. ALLAN ALEXANDER
UNITED STATES MAGISTRATE JUDGE